JOHN BENTLER and Martha E. Bentler, by H. B. Gunderson, Their Attorney in Fact, v. B. S. BRYNJOLFSON and First National Bank of Grand Forks, a Corporation.

(165 N. W. 553.)

Contracts — sale of land — yearly payments — default — provisions as to — whole sum to become due on — effect of such provision in contract.

1. Where one sold to another a certain tract of land for a specified price payable in yearly instalments, the first of such instalments being due December 1, 1910, and the last being due December 1, 1913, and such contract contained a condition that, if default be made in any of the payments, then the whole of such purchase price and interest should become immediately due and payable; and default was made in the first payment,—the whole sum of such contract became immediately due and payable, and remained due and payable during the continuance of such default. Where such default continues, the payment due each year is not the amount specified in the contract to be payable at a certain time each year, but the whole amount of the contract is due and payable each year.

Contract — for sale of land — grains grown thereon — title to be in vendor or owner of land — till purchase price is paid — lien in nature of chattel mortgage — security — default — amount due each year is whole sum.

2. Where such contract contains a provision that, until the payment each year

38 N. D.—26.

of the payment due each year thereunder, the legal title to and possession of all the grains grown on said land shall be in the name of the first parties as owners thereof, such provision is a lien in the nature of a chattel mortgage, and is security for all that is due in a given year. If default is made and continues, the amount due each year is the whole of the purchase price, and such clause in such case secures the whole amount due.

Contracts — payments under — default crops — lien upon — security — claim and delivery — special property — proof of — judgment for possession — or value.

3. Where the last specified payment in the contract was due in December, 1913, and such default continued to exist so that the whole amount remaining unpaid upon the contract was due that year, and such contract was continued in force for the year 1914, when there was no specified payment due, the default having continued to exist, the payment due for the year 1914 was the whole amount remaining unpaid upon such contract, and under such security clause the seller had a lien upon the crops of that year for the security thereof, and, in an action of claim and delivery, is entitled to prove his special interest in such crops and his right to possession thereof, and is entitled to judgment for the possession of such crops or the value thereof, where by competent proof he has shown himself to be entitled thereto.

Claim and delivery — possession of property — taken under — identity of property — general denial — proof under.

4. Where the seller in an action of claim and delivery causes a writ of claim and delivery to be issued, and the sheriff by virtue of such writ takes possession of certain grain, and the seller, the plaintiff in the case, introduces testimony to show that the grain taken is the identical grain grown upon the premises described in his complaint, being the same premises which he sold to the defendant, the introduction of such testimony broadened the issues of the complaint in this action and gave the defendant the legal right to introduce testimony tending to prove the grain taken under the writ was not grain grown upon the premises in question, and this even though the defendant's answer was only a general denial; and it was reversible error for the court to exclude such testimony and defendant's offer to show by competent testimony that the grain taken by the sheriff was not the grain grown upon the premises described in the complaint.

Opinion filed November 27, 1917.

Appeal from the judment of the District Court of Pierce County, Honorable *A. G. Burr,* Judge.

Reversed.

*Harold B. Nelson,* for appellants.

In construing contracts the first and main rule is that the intent of the parties, as expressed in the words they have used, must govern. 9 Cyc. 577; Travelers Ins. Co. v. California Ins. Co. 1 N. D. 151, 8 L.R.A. 769, 45 N. W. 703.

It can never be assumed that the parties were making a contract they both knew would not be performed. Gorder v. Hilliboe, 17 N. D. 281, 115 N. W. 843.

Such assumption is necessary in order to sustain plaintiff's theory of the contract involved. Morrison Mfg. Co. v. Fargo Storage & Transfer Co. 16 N. D. 256, 113 N. W. 605; Young v. Metcalf Land Co. 18 N. D. 441, 122 N. W. 1101;; Stewart v. Marvel, 101 N. Y. 357, 4 N. E. 743.

All rules are subordinated to the real intention of the parties, and this is to be gathered from the contract itself, lawful in form and substance. Taylor v. Enoch Morgan's Sons Co. 124 N. Y. 184, 26 N. E. 314; Mauran v. Bullus, 16 Pet. 528, 20 L. ed. 1056; Chesapeake & O. Canal Co. v. Hill, 15 Wall. 94, 21 L. ed. 64; Wilson v. Marlow, 66 Ill. 385.

Where ambiguity is claimed the court should endeavor to ascertain the real intent of the parties. Walker v. Tucker, 70 Ill. 527, 8 Mor. Min. Rep. 672; Ross v. Garlick, 10 Rob. (La.) 365; Salmon Falls Mfg. Co. v. Portsmouth Co. 46 N. H. 249; Comp. Laws 1913, § 5908; Crimp v. McCormick Constr. Co. 18 C. C. A. 595, 34 U. S. App. 598, 72 Fed. 366; Hall v. Farmers' Nat. Bank, 53 Md. 120.

If a contract is susceptible of more than one interpretation, it is to be interpreted in the sense in which the promisor has reason to suppose it was understood by the promisee. Comp. Laws 1913, § 5909; Potter v. Berthelet, 26 Fed. 240; Metropolitan Bank v. Northern Fuel Co. 73 Ill. App. 164, 173 Ill. 345, 50 N. E. 1062; McClendon v. Moore, 68 Ark. 621, 58 S. W. 347; Bickle v. Beseke, 23 Ind. 18; Losecco v. Gregory, 108 La. 648, 32 So. 985; Wisner v. Field, 15 N. D. 43, 106 N. W. 38.

In case of doubt as to the construction of a contract, the conclusion must be in the sense the least onerous to the obligor. Wagner v. Kenner, 2 Rob. (La.) 120; Erwin v. Greene, 5 Rob. (La.) 70.

Greater weight is given to the written, rather than to the printed,

portions of the contract. Comp. Laws, 1913, § 5911; Farmers Nat. Bank v. Delaware Ins. Co. 83 Ohio St. 309, 94 N. E. 834; Union P. R. Co. v. Graddy, 25 Neb. 849, 41 N. W. 809; John Deere Plow Co. v. City Hardware Co. 175 Ala. 512, 57 So. 821; Low v. Young, 158 Iowa, 15, 138 N. W. 828; Eighme v. Holcomb, 84 Wash. 145, 146 Pac. 391; Harney v. Wirtz, 30 N. D. 292, 152 N. W. 803; Bolman v. Lohman, 79 Ala. 67; Regent State Bank v. Grimm, 35 N. D. 290, 159 N. W. 842.

Where there is a conflict, the written portions will control. Loveless v. Thomas, 152 Ill. 479, 38 N. E. 907; Murray v. Pillsbury, 59 Minn. 85, 60 N. W. 844; Clark v. Woodruff, 83 N. Y. 518.

Where parties do not agree upon the same terms, there is no completed contract. 1 Elliott, Contr. § 36; Phenix Ins. Co. v. Schultz, 25 C. C. A. 453, 42 U. S. App. 483, 80 Fed. 337.

An agreement is reached when without fraud, duress, or mistake on the part of either, one submits, and the other accepts, a given proposition. 1 Elliott, Contr. § 36; Davenport v. Newton, 71 Vt. 11, 42 Atl. 1087; American Can Co. v. Agricultural Ins. Co. 12 Cal. App. 133, 106 Pac. 720.

The acceptance must be unconditional. One who makes an offer cannot be bound by a conditional acceptance. Comp. Laws 1913, §§ 5859, 5862; Martin v. Northwestern Fuel Co. 22 Fed. 596; Bowen v. Hart, 41 C. C. A. 390, 101 Fed. 376; Breen v. Mayne, 141 Iowa, 399, 118 N. W. 441; Melick v. Kelley, 53 Neb. 509, 73 N. W. 945; Strong & T. Co. v. H. Baars & Co. 60 Fla. 253, 54 So. 92; Monk v. McDaniel, 116 Ga. 108, 42 S. E. 360; Baxter v. Bishop, 65 Iowa, 582, 22 N. W. 685; Flynn v. Dougherty, 3 Cal. Unrep. 412, 26 Pac. 831; Corcoran v. White, 117 Ill. 118, 57 Am. Rep. 858, 7 N. E. 525; Sawyer v. Brossart, 67 Iowa, 678, 56 Am. Rep. 371, 25 N. W. 876; Esmay v. Gorton, 18 Ill. 483; Payne v. Newby, 49 Ill. App. 141; Scribner v. Rutherford, 65 Iowa, 551, 22 N. W. 670; Green v. Cole, 103 Mo. 70, 15 S. W. 317; Krum v. Chamberlain, 57 Neb. 220, 77 N. W. 665; Beiseker v. Amberson, 17 N. D. 215, 116 N. W. 94; Patterson v. Farmington Street R. Co. 76 Conn. 628, 57 Atl. 853; Harding v. Gibbs, 125 Ill. 85, 8 Am. St. Rep. 345, 17 N. E. 60; McCormick v. Bonfils, 9 Okla. 605, 60 Pac. 296; Parlin v. Hall, 2 N. D. 473, 52 N. W. 405; Cedar

Rapids Lumber Co. v. Fisher, 129 Iowa, 332, 4 L.R.A.(N.S.) 177, 105 N. W. 595.

Under a general denial by way of answer, defendant may show anything that will defeat plaintiff's right to recover, or, in this case, plaintiff's right to possession of the property. Aultman & T. Co. v. O'Dowd, 73 Minn. 58, 72 Am. St. Rep. 603, 75 N. W. 756; Gunderson v. Holland, 22 N. D. 258, 133 N. W. 546; Advance Thresher Co. v. Pierce, 74 Mo. App. 676; Oester v. Sitlington, 115 Mo. 247, 21 S. W. 820; Cunningham v. Skinner, 65 Cal. 385, 4 Pac. 373; 34 Cyc. 1501; Hillman v. Brigham, 110 Iowa, 220, 81 N. W. 451; Pulliam v. Burlingame, 81 Mo. 111, 51 Am. Rep. 229.

And where a general denial has been interposed, plaintiff must prove every collateral fact necessary to establish the cause of action. Harvey v. Ivory, 35 Wash. 397, 77 Pac. 725; Aultman, M. & Co. v. Stichler, 21 Neb. 72, 31 N. W. 241; Jackson v. Morgan, 167 Ind. 528, 78 N. E. 633; Kaufman v. Cooper, 38 Mont. 6, 98 Pac. 504, 1135.

The burden of proof is upon the plaintiff to show that he is entitled to the property taken. Chaffee v. Blaisdell, 142 Mass. 538, 8 N. E. 435; Russell v. Amundson, 4 N. D. 112, 59 N. W. 477; Stephens v. Williams, 46 Iowa, 540; Vennum v. Thompson, 38 Ill. 143; Plano Mfg. Co. v. Daley, 6 N. D. 330, 70 N. W. 277; Haveron v. Anderson, 3 N. D. 540, 58 N. W. 340; 34 Cyc. 1503.

The property described in the complaint is the property in question in claim and delivery. Shinn, Replevin, § 457; Talcott v. Belding, 4 Jones & S. 84; Nicholson v. Dyer, 45 Mich. 610, 8 N. W. 515.

The rule as to the identification of the property is very strict. Ames v. Mississippi Boom Co. 8 Minn. 467, Gil. 417; Stanchfield v. Palmer, 4 G. Greene, 23; Russell v. Amundson, 4 N. D. 112, 59 N. W. 477; Berthold v. Holman, 12 Minn. 347, Gil. 221, 93 Am. Dec. 233; Hardin v. Palmerlee, 28 Minn. 453, 10 N. W. 773; Cobbey, Replevin, § 27; Shackelford v. Hargreaves, 42 Neb. 680, 60 N. W. 951; Nichols & S. Co. v. Paulson, 10 N. D. 440, 87 N. W. 977.

The judgment is not supported by the evidence, but is contrary thereto. John Deere Plow Co. v. City Hardware Co. 175 Ala. 512, 57 So. 821; Martin v. Northwestern Fuel Co. 22 Fed. 596; Bowen v. Hart, 41 C. C. A. 390, 101 Fed. 376; Ames v. Mississippi Boom Co. 8 Minn. 467, Gil. 417.

*Richard E. Wenzel,* for respondents.

When parties enter into a contract they do so with the law in reference to the same as it then existed, ever in mind, and the construction of a contract is always with this consideration.  2 Elliott, Contr. § 1507.

"A contract should be construed so as to carry out the real intention of the parties, even though it is necessary to depart from the strict letter."  Ross v. Garlick, 10 Rob. (La.) 365.

The issue here was whether or not plaintiff was entitled to the possession of the property described in the complaint.  The evidence showed he was so entitled.  11 Enc. Ev. 224.

GRACE, J.   This action is one of claim and delivery for the recovery of possession of certain personal property, or, in the event possession thereof cannot be had, for judgment for the value thereof.

The complaint is in the ordinary form, and among other things alleges the right to possession of 936 bushels of oats and 663 bushels of barley, grown and raised upon the west half of section 21, township 158, range 73, Pierce county, North Dakota, for the season of 1914.

The answer is a general denial, and the further allegation that the value of the property described in the complaint is $1,430.

The facts in the case are substantially as follows: On the 23d day of September, 1909, the plaintiffs were the owners of the west half of section 21, township 158, range 73, Pierce county, North Dakota.  On the 23d day of September, 1909, the plaintiffs agreed to sell said premises to the defendant for the sum of $12,800, and, in pursuance of such agreement, executed and delivered to the defendant a contract for deed of said premises.  The defendant agreed to pay the purchase price of such premises at the times and in the manner as follows:  $3,800 on or before December 1, 1910; $3,000 on or before December 1, 1911; $3,000 on or before December 1, 1912; and $3,000 on or before December 1, 1913,—with interest at the rate of 7 per cent per annum, payable annually, on the whole sum remaining from time to time unpaid.  He made the following payments upon such contract: Paid on principal December 1, 1910, $1,800; paid interest until December 1, 1910, $1,060.26; January, 1912, defendant paid $1,000; December,

1912, defendant paid $2,000. These payments were the only payments made upon such contract.

The contract for deed is in the ordinary and customary form of such contracts, with the exception that it contains the following provision: "It is mutually agreed that, until the payment each year of the payment due each year hereunder to the said first parties, the legal title to, and the possession of, all grains grown upon said land during that year shall be and remain in the first parties as owners thereof."

The main question presented is the interpretation of the contract and the intention and effect of the clause therein contained and above quoted, and the further question of the correctness of the court's ruling on defendant's offer of proof as to the identity of the property; to the solution of which questions we will direct our attention.

Appellant claims that the crops were to be security for the payment due the year the crop was grown, and nothing more, and that therefore this contract made no provision for the 1914 crop.

Plaintiff claims that, under the stipulation above quoted, the crop during each year was held as security for the entire sum due on the contract.

The contract in question remained in full force and effect up to December, 1914. It was not canceled, and remained effective as a contract for deed until the time stated. To us there appears no ambiguity in the contract. From the contract it is easy to ascertain the intentions of the parties. It is clear that the clause in the contract, above quoted, concerning the title and possession of the grain grown upon said land, was intended as security for the payments to be made upon such contract and was in the nature of a chattel-mortgage lien upon defendant's interest in the crops to be raised upon said land to secure the payments to be made, as specified by the contract itself, and in accordance with all the terms and conditions of such contract. A further provision in such contract is as follows: "And in case of the failure of the said party of the second part (defendant) to make either of the payments, or interest thereon, or any part thereof, or perform any of the covenants on his part hereby made and entered into, then the whole of said payments and interest shall become immediately due and payable."

An inspection of the testimony discloses that the defendant failed to make all the payment due December 1, 1910. He paid only $1,800 on the principal and $1,060.26, which paid interest up to December 1, 1910. He was thus short in his payment due December 1, 1910, the sum of $2,000. Under the terms of the contract the balance of the purchase price and interest, if any, became immediately due and payable by reason of such default, and would all remain due and payable until such time as such default was removed by sufficient payments. Defendant was in default in his payments each year to the extent that he had failed to pay all the payments due in each year, together with all interest remaining due from time to time on the whole sum. By reason of such default the whole sum was due and payable. If the defendant had at any time paid any amounts sufficient to equal the amount which he was in default, then the default would be cured and the whole sum would not be due each year, but such sums only as were specified in the contract, together with the interest. The default in the payments continued during all the time of the contract from December 1, 1910, up to the fall of 1914, and therefore, each year, from 1910, the whole purchase price of such land remained due and payable by reason of such default, and the balance of the purchase price which remained unpaid, with interest thereon, continued to be due in 1914, which balance of the purchase price and interest was in fact the payment which was due or remained due in 1914, and the defendant's share of the crop on said land for 1914 must be held to be, and was, security for the payment of such balance of purchase price and interest so remaining unpaid.

The plain intention of the security clause on the crop was to secure all that was due upon the contract in any year. We are quite clear that the plaintiffs in this case are entitled to be adjudged to have security on such half of the crop for the year 1914, not only by the plain intention of the terms of the contract, but also by reason of the special agreement or contract brought about by the correspondence between plaintiffs and defendant, and especially by reason of the contents of "exhibit 8."

It is clear from what we have said that the plaintiffs have a lien on, and are entitled to the possession of, one half of the grain raised upon the east half of section 21, township 158, range 73, Pierce county,

North Dakota, for the year 1914, or, in the event they cannot get possession of such grain, or possession could not be delivered to them, the plaintiffs would then be entitled to judgment for the market value thereof. In this proceeding the sheriff did take possession of certain grain, the same being in kind and quantity as follows: 936 bushels of oats, and 487 bushels of barley. Defendant maintains that such oats and barley were not raised upon the east half of section 21, above described, but upon other land belonging to the defendant, in the crops upon which plaintiffs had no claim, interest, or lien.

The defendant, for his answer in this case, interposed a general denial to plaintiffs' complaint, and thus put in issue every material allegation in the complaint, which includes the title and right of possession, which must also include unlawful detention; the sheriff in this case having in connection with the proceedings served the writ of claim and delivery and taken certain grain into his possession by virtue thereof, which grain so taken by the sheriff we shall subsequently fully show was claimed to be the same grain which was grown upon the land described in the complaint for the year 1914.

There is, however, a further question in this case. This question has reference to the exclusion of testimony tending to show the grain taken by the sheriff was not the grain grown upon the premises described in the complaint. It is held, the exclusion of such testimony, and offer of such testimony, is reversible error, for which a new trial ought to be granted. The allegations of the complaint as originally drawn only went to the question of ownership and right of possession of the grain grown upon the premises in question. If the writ of claim and delivery had not been procured, there would have been no other issues; but when the plaintiffs procured the writ and took possession of the property, and at the trial introduced testimony tending to show that the grain so taken was the grain grown upon the premises in question, the issues of the case became materially broadened; and while the answer in its original state may not have been sufficient under which the defendant could show what he attempted and offered to show, nevertheless, when the issues had been broadened by the plaintiff and testimony introduced on such issues as broadened, the defendant could not be precluded from introducing testimony which tended to disprove evidence relating to the issues as broadened. For instance, the plain-

tiffs introduced "exhibit 14," which was the sheriff's return on the writ of claim and delivery. Such return shows that the sheriff took into his possession certain grain, which was the same grain described in the affidavit, and the affidavit necessarily described the same grain which is in controversy in the complaint. The plaintiff thus introduced evidence tending to show that the grain taken by the sheriff was the same grain as grown upon the premises in question for the year 1914. If the defendant could show by competent testimony that the grain taken by the sheriff for the plaintiffs and afterwards delivered to the plaintiffs was not the grain grown upon the premises described in the complaint, he should have been allowed to do so.

The judgment of the trial court is reversed, and the case is remanded to the District Court for a new trial.

CHRISTIANSON, J. (concurring in part and dissenting in part). I concur in the construction placed upon the contract between the parties to this litigation in the opinion prepared by Mr. Justice Grace. But I am unable to concur in that part of his opinion wherein the rejection by the court of certain evidence, offered by the defendant with respect to the identity of the grain seized by the sheriff in the claim and delivery proceedings, is held to be reversible error. In the complaint the plaintiffs claim the ownership of certain grains grown during the year 1914 on lands described in the contract involved in this case. The defendant's answer consists of a qualified general denial and an allegation that the property taken from the defendant is of the value of $1,430. The case was tried to a jury, but, as both parties moved for a directed verdict at the close of all the testimony, the jury was discharged, and the trial court made findings of fact and conclusions of law in favor of the plaintiffs.

It is well to remember that a claim and delivery proceeding is not an action, but merely an ancillary proceeding, and does not necessarily affect the issues in the main action. The statutory claim and delivery proceeding differs to some extent from the common-law action of replevin. The only issue framed by the pleadings in this case was whether the plaintiff was the owner, and entitled to the possession, of the property described in the complaint, or the value thereof in case a return could not be had. The determination of this question depended

principally upon the construction of a certain contract. There was no dispute in the evidence as to the amount or value of such grain. In fact the amount and value found in the judgment in this case is based upon the testimony of the defendant himself. The members of this court are all agreed that the plaintiffs are entitled to judgment awarding them the possession of the grain grown during 1914 upon the lands described in the contract, or the value of such grain, in event a possession thereof cannot be had.

The findings of fact do not purport to pass upon the identity of the grain. They merely find that plaintiffs are entitled to the possession of the grain, and fix the amount and value thereof. There is no finding to the effect that the grain seized by the sheriff in the claim and delivery proceeding is the grain described in the complaint. Consequently there is no contention that the facts found by the trial court are erroneous. On the contrary the majority opinion fully confirms the correctness of the findings of fact in every particular.

It is true the court received in evidence the sheriff's return in the claim and delivery proceeding, and rejected certain evidence offered by the defendant tending to show that the sheriff had seized some grain not involved in the action. It is also true that, in its conclusions of law and in the judgment entered, the court provided that plaintiff retain possession of the grain seized by the sheriff. While the rulings on the reception and exclusion of evidence were inconsistent, it is only fair to the trial court to say that only a general objection was made to the sheriff's return when it was offered in evidence. But manifestly the reception of this evidence and the exclusion of the evidence offered by the defendant in no manner affected the right of the plaintiffs to the relief demanded in their complaint. The members of this court are all agreed that the plaintiffs are entitled to the relief sought. In so far as the conclusions of law and the judgment entered sought to award to plaintiffs the grain seized by the sheriff in the claim and delivery proceedings, they are erroneous. But in my opinion it is not necessary or proper to order a new trial, but the judgment should be modified by striking therefrom the provisions awarding to the plaintiffs the right of possession of the grain seized by the sheriff. The judgment as thus modified would award to the plaintiffs a judgment in the alternative for the possession of the grain described in the complaint, or the value thereof in case

possession cannot be had.    And every member of this court is agreed that plaintiffs are entitled to such judgment.

ROBINSON, J. (dissenting).    In this case plaintiff sues to recover oats, 936 bushels, and barley, 633 bushels, or the value of the same. The case was tried to a jury.    Both parties moved for a directed verdict; the court made findings of fact and conclusions of law and gave judgment for the plaintiff, and defendant appeals.

As the complaint and evidence show, in September, 1909, the plaintiff contracted to sell defendant a half section of land in Pierce county, for yearly payments, thus: $3,800, $3,000, $3,000, $3,000, with annual interest to be paid on the 1st of December of each year, commencing in 1910.    The written contract contained a clause as follows: That until the payment each year of the payment due each year hereunder to the said first parties, the legal title to and the possession of all grain grown upon said land during that year shall be and remain in the second parties as owners thereof.    In each of the four years the payments were about equal the interest.    In 1914 the defendant concluded to abandon the land, and to take all the crops of that year without making any payment on the sum of about $12,000.    His claim is that, under the literal terms of the contract which he himself had drafted, the plaintiffs had no title to or interest in crops produced in the year 1914.    That is clearly contrary to the plain words of the contract, which gives plaintiffs the yearly crops to secure the amount due in each year.    In the year 1914 the amount due was about $12,000.

The only real question is in regard to the identity of the grain, which the plaintiffs were forced to replevin and take under claim and delivery proceedings.    The plain duty of the defendant was to keep separate the plaintiffs' share of the grain, and deliver the same on demand, and not to try to defeat a just claim by any play of tweedle dum or tweedle di dum or hide-and-seek.    The complaint and replevin papers were for 936 bushels of oats and 633 bushels of barley grown during the season of 1914 on the land in question.    (W½—21—158—73.)    The return of the sheriff is that in January, 1915, he served the summons and replevin papers personally on defendant, and took from a granary on the place 936 bushels oats and 487 bushels barley.    The answer contains merely a general denial and an averment that the property taken was worth

$1,430, and demands judgment for the same. It does not aver that the grain taken is not the identical grain grown on the place, nor is there any showing or attempt to show that such a claim was made to the sheriff when he took the grain,—and that was the time for the defendant to speak and to show the sheriff the grain grown on the land. The land was rented by the defendant and he was to have half the crops. The grain was taken from the granary on the land, and the tenant did not claim that the sheriff took his share of the crops. As appears from the testimony, there was grown and threshed 1,872 bushels of oats, and the sheriff took 936 bushels and no more. There was grown 1,200 or more bushels of barley. Defendant took two or three hundred bushels, and the sheriff took half the remainder, or 487 bushels, 12 pounds. Defendant testifies that the division of the crops was made by the tenant that farmed the land, and that the sheriff took all grain produced on the land that he, the defendant, did not take.

At the close of all the testimony Mr. Nelson, counsel of defendant, moved for a dismissal of the case and a directed verdict. Then a recess was taken for a few minutes, on motion of counsel for the defendant.

After the recess an offer was made to prove by defendant that the grain taken by the sheriff was not grown on the place. The offer was properly denied. It was contrary to the pleadings and the prior testimony of the defendant. It was offering a new issue after the close of the case. It was an offer to impeach the conduct of both the defendant and his counsel. It was the duty of the defendant to point out and deliver to the sheriff the grain grown on the place. In the conduct of a lawsuit there is a time for candor and fairness. There is no time for deception, duplicity, or boy play.